**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ALEXANDER A. WILLIAMS,** | ) | |
| **ID # 19042243,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:19-CV-2468-G-BH** |
| **vs.** | ) | |
| | ) | |
| **DALLAS COUNTY,** | ) | |
| **Defendant.** | ) | **Referred to U.S. Magistrate Judge**[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *pro se* prisoner plaintiff's complaint should be **DISMISSED** with prejudice, and the motion for injunctive relief, received on January 24, 2020 (doc. 23), should be **DENIED**.

## I. BACKGROUND

On October 18, 2019, Alexander A. Williams (Plaintiff), an inmate in the Dallas County Jail, sued his appointed criminal defense attorney (Attorney), Enterprise Car Rental (Enterprise), and Dallas County (County). (*See* doc. 3.)[2] He appeared to claim that he was assaulted by a police officer who was trying to arrest him in an Enterprise parking lot on or around June 5, 2019. (*See* doc. 3 at 4; doc. 10 at 2.) He told Attorney about the alleged false arrest and assault, which he claimed took place in front of two unidentified Enterprise employees and should have been recorded by the body cams of the officers at the scene, and by Enterprise's surveillance equipment. (*See* doc. 3 at 4; doc. 10 at 2-3, 5.) Plaintiff claimed Attorney failed to investigate his case or obtain footage of the alleged assault. (*See* doc. 3 at 3-4; doc. 10 at 2-4.) He also claimed that

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Enterprise erased the surveillance footage of his assault, and that County erased or misplaced the police body cam footage. (*See* doc. 3 at 3-4; doc. 10 at 5.)

Plaintiff filed an amended complaint on December 6, 2019, in which he only asserted claims against County. (*See* doc. 17 at 3-4.)[3] He alleged that it (1) failed to provide him with police body cam footage from his arrest; (2) gave the arresting officer immunity for the alleged assault; and (3) refused to provide him medical attention and was deliberately indifferent to his medical needs. (*See id.*) By correspondence received on January 24, 2020, he complained about $10.00 withdrawals from his inmate account by the jail each time he sought medical attention and sought an injunction requiring the jail to cease and desist from withdrawing payments and to reimburse him for previous payments. (*See* doc. 23.) In a separate handwritten filing received on January 28, 2020, Plaintiff claimed that he had been denied prescribed allergy and sinus medication in jail because his prescription had expired, and that he was told that he could not receive a refill until he placed a medical request, which would cost him $10.00. (*See* doc. 24.) Plaintiff stated he could not afford to place the medical request, resulting in a fight with another inmate who was bothered by his snoring. (*See id.*). No process has been issued in this case.

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80

---

[3] Plaintiff's amended complaint also listed the cause number for *Williams v. Burnhard*, No. 3:19-cv-2502-N-BH (N.D. Tex,), a separate related case he filed against another one of his appointed defense attorneys, Catherine Burnhard. (*See* doc. 17 at 1.) The amended complaint contained no allegations relating to the attorney, however, but the correspondence included with it stated that he wished to file an appeal, and it was separately docketed as Plaintiff's objections to the then pending recommended dismissal of *Burnhard*. (*See* No. 3:19-cv-2502-N-BH, docs. 19, 20.) Plaintiff's objections and claims against Burnhard were resolved in that prior case and are not before the Court here.

(5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. SECTION 1983

Plaintiff sues County under 42 U.S.C. § 1983. It "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Municipalities, including counties and cities, may be liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her

constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar 2, 2006) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

"Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to "'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citation omitted); *see also id.* at 580 (stressing that "*Monell* plaintiffs [need] to establish both the causal

link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights).") (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *accord Piotrowski*, 237 F.3d 579-80. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to adequately plead a claim of municipal liability. *Spiller*, 130 F.3d at 167. In addition, a single incident is insufficient to demonstrate an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cnty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail.").

Here, Plaintiff alleges that his civil rights were violated because he was not provided with body cam footage of his arrest, his arresting officer was given immunity from suit for his alleged assault of Plaintiff, and he was treated with deliberate indifference to his medical needs relating to a hernia, injuries to his face, and allergy and sinus medication. (*See* doc. 17 at 3-4; doc. 10 at 7-10; doc. 24.) He also generally disagrees with County's treatment of "patients who are suffering from real medical problems," claiming that County is "more interested in conviction than [it is] in

someone's health." (doc. 10 at 11.) He does not, however, allege or identify a policy statement, ordinance, regulation or decision regarding body cam recordings, officer immunity, or medical care that was officially adopted and promulgated by County's lawmaking officers, or by an official to whom the lawmakers have delegated policy-making authority. Nor does he allege any persistent or widespread practice which caused him injury, relying instead only on the treatment he received in this single case. A single instance does not establish a municipal policy or custom or permit the inference of such. *See, e.g.*, *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (affirming no § 1983 liability for county where the alleged policy or custom arose solely from the treatment of the deceased prisoner); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy" for municipal section 1983 liability).

Plaintiff also has not satisfied the elements to impose municipal liability on County to the extent he claims that County had a "policy and practice" of charging inmates $10.00 for each request for medical attention, which "serves to chill and dissuade inmates from seeking medical attention" and "violates [Plaintiff's] right to due process of law as it relates to proper and adequate medical care." (doc. 23 at 1.) He does not identify a specific policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by County's lawmaking officers, or by an official who had been delegated law making authority; and he has failed to allege "a pattern of abuses that transcends the error made in a single case" in order to establish the existence of a custom. *Piotrowski*, 237 F.3d at 582. Plaintiff's reference to the provisions of Texas Government Code § 501.063 does not save his § 1983 claim.[4] The Fifth Circuit has rejected §

[4] Section 501.063 of the Texas Government Code, effective September 1, 2019, provides:

1983 municipal liability based on a state statute. *See, e.g., Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (holding that a county was not liable under § 1983 for county's judge's enforcement of a state statute); *see also Cain v. City of New Orleans*, No. 15-4479, 2016 WL 2849498, at *8 (E.D. La. May 13, 2016) (rejecting premise that "a municipal defendant may be held liable under section 1983 for enforcing a state statute, even though the state mandates a particular course of action.") (citing cases).

Accordingly, Plaintiff has failed to state a viable § 1983 claim against County.[5]

---

> (a)(1) An inmate confined in a facility operated by or under contract with the department, other than a halfway house, who initiates a visit to a health care provider shall pay a health care services fee to the department in the amount of $13.55 per visit, except that an inmate may not be required to pay more than $100 during a state fiscal year.
>
> (2) Repealed by Acts 2019, 86th Leg., ch. 1046 (H.B. 812), § 2.
>
> (3) The inmate shall pay the fee out of the inmate's trust fund. If the balance in the fund is insufficient to cover the fee, 50 percent of each deposit to the fund shall be applied toward the balance owed until the total amount owed is paid.

(b) The department shall adopt policies to ensure that before any deductions are made from an inmate's trust fund under this section, the inmate is informed that the health care services fee will be deducted from the inmate's trust fund as required by Subsection (a).

(c) The department may not deny an inmate access to health care as a result of the inmate's failure or inability to pay a fee under this section.

(d) The department shall deposit money received under this section in an account in the general revenue fund that may be used only to pay the cost of correctional health care. At the beginning of each fiscal year, the comptroller shall transfer any surplus from the preceding fiscal year to the state treasury to the credit of the general revenue fund.

[5] Plaintiff dropped his claims against Attorney and Enterprise by removing them from his amended complaint. *See, e.g.*, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Warner v. Lear Corp.*, No. 3:15-CV-1878-D, 2016 WL 2594465, at *3 (N.D. Tex. May 5, 2016) (concluding that entities were dropped as defendants based in part on their removal from the case caption, description of the defendants in the pleading, and absence of any claims asserted against the entities in amended complaint). To the extent Plaintiff did not intend to drop his claims against Attorney and Enterprise in this lawsuit, he has failed to state a claim because neither Attorney nor Enterprise are state actors for purposes of §1983, and he has not alleged any facts to support a claim that Attorney or Enterprise were acting in concert with the state or its agents, were performing a state function, or that their actions were attributable to the state. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).

## IV. RECOMMENDATION

The plaintiff's claims against the defendant should be **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim. This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[6] His motion for injunctive relief should be **DENIED**.

**SIGNED this 30th day of July, 2020.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

[6] Section1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.